IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

_____
)
SANDRA ELEVARIO,                    )
as Personal Representative of the   )
Wrongful Death Estate of            )
XAVIER DEL VAL,                     )
and as parent and next friend of X.E.)
)
Plaintiff,              )
)
v.                                  )   Case No.  10-cv-00015-RB-WDS
)
SERGIO HERNANDEZ,                   )
DAVID NEVARRO, and                  )
JOSE ZENTENO, et al.,               )
)
Defendants.             )
_____ )

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment as to All Claims Against Defendant Scott Alan Joseph, M.D. (Doc. 103.)  Having considered the parties' memoranda, the relevant case law, and otherwise being fully informed, the Court grants Defendant's Motion for Summary Judgment and dismisses Counts IV and VII of Plaintiff's Complaint as to Dr. Scott Alan Joseph.

**I.   INTRODUCTION**

Plaintiff Sandra Elevario brings this case as the personal representative of the wrongful death estate of decedent, Mr. Xavier Del Val, and as parent and next friend of X.E., decedent's daughter. Mr. Del Val was an inmate incarcerated at the Lea County Correctional Facility (LCCF) in Hobbs, New Mexico at the time of his death.  On May 25, 2006, while incarcerated at LCCF, Mr. Del Val

suffered a seizure and died. Plaintiff filed a Complaint (Doc. 1-1) in this case, alleging violations of the New Mexico Tort Claims Act and 42 U.S.C. § 1983 in the Second Judicial District Court of Bernalillo County for the State of New Mexico on May 22, 2009. A Notice of Removal (Doc. 1) was filed on January 7, 2010.

In Count IV of the Complaint, Plaintiff alleges that Dr. Joseph acted with deliberate indifference to Mr. Del Val's medical needs by prescribing him an anti-psychotic medication (Geodon) that was not needed and which increased his likelihood of suffering a seizure; as a proximate result of Dr. Joseph's indifference, Plaintiff alleges that Mr. Del Val suffered a seizure and died. (Compl. ¶¶ 65–66.) Count VII requests punitive damages against Dr. Joseph, alleging that his actions were willful and malicious. (Compl. ¶¶ 72–75.) Defendant Dr. Joseph filed a Motion for Summary Judgment on June 21, 2011, requesting that the Court dismiss all claims against him. (Doc. 103.) Dr. Joseph argues (1) that Plaintiff's Section 1983 claim alleging a violation of the Eighth Amendment must fail as a matter of law because Plaintiff does not have any evidence to establish that Dr. Joseph's use of the drug Geodon constituted a "deliberate indifference" to the prisoner's serious medical needs; and (2) that, to the extent Plaintiff alleges Dr. Joseph was medically negligent, those claims must also fail as a matter of law because Plaintiff has not presented any evidence that Dr. Joseph departed from the recognized standards of medical practice in the community in his treatment of decedent. (Doc. 103 at 6, 9.)

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). "A fact is 'material'

if under the substantive law it could have an effect on the outcome of the lawsuit. An issue is 'genuine' if 'a rational jur[or] could find in favor of the nonmoving party on the evidence presented.'" *Adams v. Am. Guarantee and Liab. Ins. Co.*, 233 F.3d 1242, 1246 (quoting *Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir.2000). The trial court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party." *Simms v. Oklahoma ex rel. Dept's of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The movant, Defendant Dr. Joseph, carries the initial burden of showing that no genuine issues of material fact exist. *Adams*, 233 F.3d at 1246; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant meets this initial burden, then the burden shifts to the non-moving party, Plaintiff Sandra Elevario, to find sufficient evidence that would warrant submission of the case to a trier of fact. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992). "Evidence is sufficient to withstand summary judgment if it is significantly probative and would enable a trier of fact to find in the nonmovant's favor." *Adams*, 233 F.3d at 1246.

**III.   STATEMENT OF FACTS**

Mr. Del Val was under the care and treatment of Dr. Joseph at the time of his death. Dr. Joseph knew that Mr. Del Val had a seizure disorder and was being treated with the anti-seizure medication, Dilantin. (Def. Ex. A, Pl. Exs. 1 & 2.) Additionally, prior to beginning his treatment with Dr. Joseph, Decedent had been prescribed Geodon, an anti-psychotic drug, under the direction of another psychiatrist for the treatment of schizophrenia and depression. (Def. Ex. A.)

3

Beginning on January 19, 2006, Defendant reported hearing voices that were waking him up at night and telling him to break down the door. (Def. Ex. A.) Dr. Joseph reported on January 27, 2006 that Mr. Del Val had a history of psychiatric problems, including voices, impulse problems, and mood liability. (Def. Ex. B.) Dr. Joseph determined to continue treating Mr. Del Val with Geodon and increased the dosage to 160 mg. (Def. Ex. B.)

On February 6, 2006, Mr. Del Val was discharged to another unit. (Def. Ex. C.) Dr. Joseph diagnosed Mr. Del Val with psychosis/mood disorder, secondary traumatic brain injury, and instructed that he continue his medications as prescribed. (Def. Ex. C.) Dr. Joseph additionally noted that Mr. Del Val's Dilantin level was low and ordered a Dilantin level test. (Def. Ex. C.)

On April 10, 2006, Dr. Joseph saw Decedent again. (Def. Ex. D.) Mr. Del Val was complaining of worsening auditory hallucinations, of which Dr. Joseph was skeptical, because they did not start until after Decedent had been told that he was being discharged. (Def. Ex. D.) Indeed, Dr. Joseph indicated several times in reports, between March 23, 2006 and April 10, 2006, that he did not believe that Mr. Del Val's vocal hallucinations were real because they did not appear until after Dr. Joseph indicated to Mr. Del Val that he was going to be discharged. (Pl. Ex. 6.) Nevertheless, Dr. Joseph noted that the Geodon seemed to be helping Decedent immensely in terms of controlling his impulses. (Def. Ex. D.)

On May 25, 2006, Mr. Del Val suffered a seizure and died. The autopsy indicated that Mr. Del Val "died of a seizure disorder"; the manner of death, however, was listed as "undetermined." (Pl. Ex. 2.) At the time of his death, Mr. Del Val was taking both Geodon and Dilantin. (Pl. Ex. 3.) Mark L. Berger, M.D., Plaintiffs' only expert witness, indicates that the seizure was most likely caused by dropping Dilantin levels in Mr. Del Val's blood that resulted from not

4

receiving his medications for almost two days before his death and for four out of the last seven days of his life. (Def. Ex. E.) Dr. Berger does not intend to express any opinions concerning Dr. Joseph's actions or his treatment of Mr. Del Val. (Def. Ex. F., Berger Dep. 6:9–18, 7:6–11, 34: 4–12.)

## IV.   ANALYSIS

### A.   42 U.S.C. § 1983 Claim for Violation of the Eighth Amendment

Defendant argues that Plaintiff's Section 1983 claim against Dr. Joseph for violation of the Eighth Amendment must fail as a matter of law because Plaintiff has not established that Dr. Joseph acted with deliberate indifference—that he was aware of a serious risk of harm to Mr. Del Val and that he consciously disregarded that risk. (Doc. 103 at 6–9.) Mere negligence or an inadvertent failure to provide proper care is not sufficient to establish an Eight Amendment claim. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). To state a Section 1983 claim for violation of a prisoner's Eighth Amendment constitutional right to be free from cruel and unusual punishment, a plaintiff must demonstrate that a prison official's acts or omissions constituted a "deliberate indifference" to the prisoner's serious medical needs. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Estelle v. Gamble*, 42 U.S. 97, 104 (1976). Deliberate indifference exists where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Court now considers whether Plaintiff has set forth sufficient facts to warrant submission of the matter to a trier of fact. *Adams*, 233 F.3d at 1246 ("Evidence is sufficient to withstand summary judgment if it is significantly probative and would enable a trier of fact to find in the nonmovant's favor.").

"Deliberate indifference has objective and subjective components." *Callahan v. Poppell*, 471

F.3d 1155, 1159 (10th Cir. 2006). On summary judgment, in order to meet the objective element of the deliberate indifference test, the plaintiff must set forth facts demonstrating that the risk to the inmates health or safety was "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Oxendine v. Kaplan*, 241 F.3d 1272, 1276–77 (10th Cir. 2001). In interpreting the objective prong of the test, the Tenth Circuit has indicated that the focus "should be solely on whether [the] harm is sufficiently serious." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). The purpose of this prong is "to limit claims to significant, as opposed to trivial, suffering." *Id*. In the case at hand, Mr. Del Val suffered death, which is alleged to have resulted from a seizure caused by Dr. Joseph's deliberately indifferent prescription of the anti-psychotic drug Geodon. This is a sufficiently serious harm to satisfy the objective component of the deliberate indifference analysis.

"To prevail on the subjective component, the prisoner must show that the defendants 'knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.' " *Callahan*, 471 F.3d at 1159 (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir.2006)). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. In the Tenth Circuit, two types of conduct have been found to constitute deliberate indifference in a prison medical case: "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment . . . ." *Self*, 439 F.3d at 1231 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir.2000)). In the case at hand, Plaintiff's central contention is that Dr. Joseph acted with deliberate indifference by prescribing the anti-psychotic drug, Geodon, knowing that Defendant had a seizure condition and the drug could increase his risk of suffering a seizure. This clearly falls into

6

the first category of claims—failure to properly treat a serious condition. "Where this sort of conduct is alleged, the medical professional has available the defense that he was merely negligent in diagnosing or treating the medical condition, rather than deliberately indifferent." *Sealock*, 218 F.3d at 1211 (citing *Estelle*, 429 U.S. at 105–06). Furthermore, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Oxendine v. Kaplan*, 241 F.3d 1272, 1277 n. 7 (10th Cir.2001).

Plaintiff argues that there is ample admissible evidence to demonstrate deliberate indifference. (Doc. 108 at 8.) First, Plaintiff asserts that Dr. Joseph knew Mr. Del Val had a seizure disorder and that Geodon could cause additional seizures. (Doc. 108 at 8, citing Pl. Ex. 1.) Dr. Joseph knew that Mr. Del Val suffered from a seizure disorder and was taking Dilantin to control his seizures (Def. Ex. A & B), and at one point, he became concerned that Mr. Del Val's Dilantin level was too low. (Pl. Ex. 1.) Furthermore, there is some evidence that Dr. Joseph understood that increasing the dosage of Geodon could lower Mr. Del Val's Dilantin levels, as he ordered a Dilantin level test to be done two weeks after increasing the Geodon dosage. (Pl. Ex. 1.) Yet, this does not constitute deliberate indifference. To the contrary, Plaintiff's Exhibit 1 (Mental Health Treatment Ctr. Discharge Summ.) demonstrates that Dr. Joseph was concerned about maintaining Mr. Del Val's Dilantin levels at acceptable levels, and therefore, not deliberately indifferent to the increased risk of seizures that prescribing Geodon to Mr. Del Val presented.

Moreover, Dr. Mark Berger, Plaintiff's only medical expert, directly contradicts Plaintiff's assertion that Dr. Joseph acted with deliberate indifference. (Def. Ex. E.) In a letter summarizing his expert opinions on the case, Dr. Berger notes the following: Dr. Joseph ordered the increase of Mr. Del Val's Geodon dosage on January 27, 2006 (Def. Ex. B); on February 1, 2006, Mr. Del Val's

Dilantin level was 6; on February 6, 2006, Mr. Del Val's Dilantin dosage was doubled from 400 mg to 800 mg; on April 21, 2006, Mr. Del Val's Dilantin level was 25; and on May 16, 2006, Mr. Del Val's Dilantin dosage was decreased to 600 mg (Def. Ex. E). Accordingly, after Dr. Joseph prescribed Geodon, Mr. Del Val's Dilantin levels actually increased; in other words, Dr. Joseph's continued use of the anti-psychotic Geodon does not appear to have increased Mr. Del Val's risk of seizures. Instead, Dr. Berger concludes that "the breach of care is most likely related to his lack of receiving the ordered Dilantin on the days mentioned above." (Def. Ex. E.) In four of the seven days before his death, Mr. Del Val did not receive his anti-seizure medication. (Def. Ex. E; Pl. Ex. 3.) Thus, Plaintiff's evidence indicates that it was the prison's failure to properly administer the medications that resulted in Mr. Del Val's death, not Dr. Joseph's prescription of the drug Geodon.

Next, Plaintiff asserts that Dr. Joseph's conduct was deliberately indifferent because he believed that Mr. Del Val was faking his symptoms, but continued to prescribe Geodon, even increasing his dosage. (Doc. 108 at 8.) To support this argument, Plaintiff presents nine Progress Notes signed by Dr. Joseph indicating that Mr. Del Val's complaints of hearing voices did not begin until after he was informed he was going to be discharged for bullying other inmates, and that he therefore believed that Mr. Del Val may have been faking some of the auditory hallucinations. (Pl. Ex. 1.) While this may be true, it does not change the fact that Mr. Del Val had been diagnosed with schizophrenia and depression and was being treated with Geodon before he was referred to Dr. Joseph. (Def. Ex. A.) Mr. Del Val had a history of psychiatric problems including auditory hallucinations, difficulties controlling his impulses, and mood liability. (Def. Ex. B.) These problems were being treated with Geodon before Mr. Del Val was referred to Dr. Joseph, and therefore, abruptly stopping treatment was likely not an option, as this could have posed an even

8

greater risk to Mr. Del Val. While it is curious that Dr. Joseph increased Mr. Del Val's Geodon dosage given the heightened risk of seizures this is alleged to cause, he may have done this to either prove or disprove his theory that Mr. Del Val was faking the auditory hallucinations. The progress notes indicate a high level of frustration by Dr. Joseph and a belief that Mr. Del Val may be faking some of his symptoms; however, they do not provide evidence that Mr. Del Val's psychosis had resolved or that Mr. Del Val was no longer suffering from any hallucinations. In sum, the progress notes do not provide evidence that Mr. Del Val no longer needed Geodon to treat his psychosis.

Lastly, in his deposition, Dr. Berger indicates that "[i]f the patient had no reason to be on Geodon, I wouldn't think the patient should be on Geodon, seizure-free or no—I mean seizures or no seizures." (Pl. Ex. 4, Berger Dep. 28:5–7.) This statement does little to support Plaintiff's notion that Dr. Joseph acted with deliberate indifference. First of all, it is not at all apparent that Mr. Del Val had "no reason" to be on Geodon given his prior history of psychosis, behavioral disorders, and mood instability. Dr. Joseph never indicated that he believed Mr. Del Val had overcome his multiple psychiatric problems and no longer needed treatment; he only stated that he believed Mr. Del Val was lying about some of the auditory hallucinations. Furthermore, during his deposition, Dr. Berger indicated that he was never asked to provide, and did not plan on providing, any opinions concerning the psychiatric care in this case, the medications that Mr. Del Val was prescribed, or whether Dr. Joseph should have been prescribed those medications. (Def. Ex. F, Berger Dep. 6:9–7:11, 34:4–12.) Without any evidence of a medical standard or prison procedure, it is difficult for the Court, or a jury, to determine that Dr. Joseph's conduct constituted deliberate indifference. *See, e.g.*, *Mata*, 427 F.3d at 756–58 (concluding that nurse acted with deliberate indifference when she sent inmate complaining of chest pains back to her cell in contravention of the DOC's Standards

and Procedures for Health Care Providers). To prevail, Plaintiff must demonstrate that Dr. Joseph knew his actions presented a substantial risk of harm to the patient, and he disregarded that risk. *Callahan*, 471 F.3d at 1159; *Kikumura v. Osagie*, 461 F.3d at 1293. Plaintiff has failed to meet this burden.

In sum, Plaintiff has failed to present sufficient evidence that would warrant submission of the case to a trier of fact, as the evidence before the Court is not sufficient to enable a trier of fact to find in Plaintiff's favor. *See Adams*, 233 F.3d at 1246; *Wichita Coca-Cola Bottling Co.*, 968 F.2d at 1024. To demonstrate deliberate indifference, Plaintiff must demonstrate that Dr. Joseph knew that, by prescribing Geodon, Mr. Del Val "faced a substantial risk of harm," and Dr. Joseph "disregarded that risk, by failing to take reasonable measures to abate it." *Kikumura*, 461 F.3d at 1293. The evidence indicates that Dr. Joseph had some concerns with Mr. Del Val's Dilantin levels following his increase of the Geodon dosage; however, there is no evidence that Dr. Joseph knew Mr. Del Val faced a substantial risk of harm. Dr. Joseph ordered tests of Mr. Del Val's Dilantin level, and he even increased his Dilantin dosage at one point. Plaintiff's own expert indicates that the cause of the seizures on May 25, 2006 was most likely due to falling Dilantin levels that resulted from Mr. Del Val not receiving Dilantin for four out of the seven of the last days of his life. (Pl. Ex. 5.) Dr. Berger offers no opinions as to Dr. Joseph's culpability, or whether prescribing Geodon presented a substantial risk of harm to Mr. Del Val. Indeed, there is no evidence in the record indicating that prescribing Geodon violated any recognized medical procedures or standard of care. Consequently, Plaintiff has failed to meet her burden of proof on summary judgment, and the Court dismisses Plaintiff's Section 1983 claim against Defendant Dr. Joseph.

**B.     Medical Malpractice Claim**

Next, Defendant Dr. Joseph argues that, under New Mexico law, in order to show medical malpractice, a plaintiff must demonstrate that the physician departed from a recognized standard of medical practice and that this departure was the proximate cause of the plaintiff's injuries; as Plaintiff has no expert witness to testify regarding the alleged breach of a standard of care by Dr. Joseph, Defendant asserts that any claims of medical negligence must fail as a matter of law. (Doc. 103 at 9.)  Plaintiff counters that expert testimony is not required in the case at hand because Dr. Joseph's medical negligence can be proven by facts which can be evaluated through common knowledge without the need of expert testimony. (Doc. 108 at 8–9.)

Under New Mexico law, "[b]efore a physician or surgeon can be held liable for malpractice in the treatment of his patient, he must have departed from the recognized standards of medical practice in the community, or must have neglected to do something required by those standards." *Mascarenas v. Gonzales*, 497 P.2d 751 (N.M. Ct. App. 1972).  Yet, "where negligence on the part of a doctor is demonstrated by facts which can be evaluated by resort to common knowledge, expert testimony is not required." *Id*.  In the case at hand, the alleged negligence on the part of Dr. Joseph cannot be demonstrated without expert testimony concerning the nature of Mr. Del Val's mental illness, the appropriateness of prescribing Geodon, the effects of Geodon on those at risk for seizures, and the chemical interactions between Geodon and Dilantin.  Scientific, technical, or other specialized knowledge is necessary to determine these matters, and therefore, Plaintiff must have a qualified expert witness possessing the requisite knowledge, skill, experience, training, or education sufficient to assist the jury in understanding these complex issues and determining the facts in issue. *See* FED. R. EVID. 702.

Plaintiff argues that it is well within the purview of the jury to determine whether it is negligent to administer an anti-psychotic drug to a person who is merely faking psychosis. Plaintiff oversimplifies the issues in this case. Dr. Joseph believed that Mr. Del Val was faking some of his auditory hallucinations; however, there is no evidence that Mr. Del Val was faking his psychosis. Mr. Del Val had a documented history of psychosis and had been diagnosed with schizophrenia, depression, hallucinations, and mood disorder. Accordingly, the evidence demonstrates that Mr. Del Val had a number of medical and psychological problems he was struggling with, including the seizures, and he was receiving several drugs to help him cope with his illnesses. Whether prescribing anti-psychotic drugs to a healthy person constitutes medical malpractice may indeed be something within the purview of a jury, but this is not the case with which the Court is presented. In sum, Plaintiff has failed to present sufficient evidence that would warrant submission of the case to a trier of fact, as the evidence before the Court is not sufficient to enable a trier of fact to find that Dr. Joseph departed from recognized standards of medical practice. *See Adams*, 233 F.3d at 1246; *Wichita Coca-Cola Bottling Co.*, 968 F.2d at 1024. There is absolutely no evidence of what those standards are or what constitutes a breach. Accordingly, Plaintiff has failed to meet her burden of proof on summary judgment, and the Court dismisses Plaintiff's medical malpractice claim against Defendant Dr. Scott Alan Joseph.

**V.    CONCLUSION**

Defendant, Dr. Scott Alan Joseph, filed a Motion for Summary Judgment requesting that the court dismiss all claims against him. (Doc. 103.) Dr. Joseph argues (1) that Plaintiff's Section 1983 claim alleging a violation of the Eighth Amendment must fail as a matter of law because Plaintiff does not have any evidence to establish that Dr. Joseph's use of the drug Geodon constituted a

"deliberate indifference" to the prisoner's serious medical needs; and (2) that, to the extent Plaintiff alleges Dr. Joseph was medically negligent, those claims must also fail as a matter of law because Plaintiff has not presented any evidence that Dr. Joseph departed from the recognized standards of medical practice in his treatment of decedent. (Doc. 103 at 6, 9.)  The Court agrees.

**WHEREFORE**, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment as to All Claims Against Defendant Scott Alan Joseph, M.D. (Doc. 103), and **DISMISSES** Counts IV and VII of Plaintiff's Complaint as to Defendant Dr. Scott Alan Joseph.

_____
**ROBERT BRACK**
**UNITED STATES DISTRICT JUDGE**